**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WILLIAM CONNELL, | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| | NO.  19-3833 |
| PENN AUTO TEAM and PENN WAREHOUSING & DISTRIBUTION, INC., | |
| Defendants. | |

<u>**MEMORANDUM**</u>

**Joyner, J.**                                    **June 11, 2021**

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. No. 24), Plaintiff's Opposition thereto (Doc. No. 26), and Defendants' Reply in Support thereof (Doc. No. 27).  For the reasons that follow, Defendants' Motion will be granted.

Plaintiff William Connell alleges that his former employers, Defendants Penn Auto Team and Penn Warehousing & Distribution, Inc. ("Penn Auto"), unlawfully discriminated against him on the basis of age and sex through their decision not to reinstate him following his termination. He claims that Defendants violated his rights under the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA"), and Title VII of the Civil Rights Act of 1964 ("Title

VII").[1] In response, Defendants argue that they had legitimate
non-discriminatory reasons for their decision and that Plaintiff
has neither established a prima facie case of discrimination nor
put forth sufficient evidence to demonstrate any pretextual bias
such that a reasonable factfinder could disbelieve Defendants'
reasoning.

## I.    FACTUAL BACKGROUND[2]

On July 21, 2010, Plaintiff was hired at Penn Auto, an
automobile processing facility located at Pier 90, E. Oregon
Ave. and Columbus Boulevard, Philadelphia.[3] Plaintiff's
employment was governed by a collective bargaining agreement and
the Penn Auto work rules. Plaintiff soon joined the
International Brotherhood of Teamsters, Local Chapter 107 (the
"Union").[4] Plaintiff's shift began at 7 a.m. and his
responsibilities included washing and fueling vehicles as well
as completing maintenance tasks. Pertinently, the maintenance
tasks were assigned between 8:00 and 8:30 a.m. and employees
were expected to wash and fuel vehicles until assignment and to

---

[1] The Age Discrimination in Employment Act, 29 U.S.C. § 621; the Pennsylvania
Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951 et seq.; Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.
[2] The following facts are undisputed unless otherwise described. Where there
is a dispute, the fact are presented necessarily in the light most favorable
to the plaintiff. See Abramson v. William Paterson Coll. of N.J., 260 F.3d
265, 267 (3d Cir. 2001).
[3] See Joint Pre-Trial Memoranda, Doc. No. 25, at 2; Defendants' Statement of
Undisputed Material Facts, ("Defendants' Facts"), Doc. No. 24-3, at 1.
[4] See Defendants' Summary Judgment Motion, Doc. No. 24, at 1.

continue to wash and fuel vehicles if no maintenance tasks were assigned.[5]

On November 21, 2018, General Manager Alexis Cantwell observed Plaintiff and his co-worker, Mr. Galloway, hailing a shuttle to begin work at 8 a.m., an hour after their shift started.[6] This prompted Ms. Cantwell along with Office Manager John Jones to review video footage of Plaintiff's conduct from the previous work week.[7] The footage revealed that on numerous occasions Plaintiff and Mr. Galloway sat in vehicles during their shift rather than working.[8] The review also led Ms. Cantwell and Mr. Jones to discover that two other employees, Ms. Baraniecki and Ms. Kajkowski, had committed similar misconduct.[9]

In sum, the managers determined that Plaintiff and Mr. Galloway sat in company vehicles for a total of 342 and 380 minutes, respectively.[10] Ms. Baraniecki and Ms. Kajkowski sat in vehicles for a total of 84 minutes each.[11] On November 26, 2018, pursuant to the Penn Auto workplace rules, which denoted time theft as an offense that could result in immediate termination, all four employees were terminated.[12] At the time of termination,

---

[5] See Defendants' Facts, at 3.
[6] Id.
[7] Id. at 4.
[8] Id.
[9] Id.
[10] See Joint Pre-Trial Memoranda, at 2.
[11] See Defendants' Facts, at 8.
[12] See Defendants' Facts, at 3-4.

Plaintiff was 55, Mr. Galloway was 47, Ms. Baraniecki was 27, and Ms. Kajkowski was 27.[13]

Following termination, the Union filed grievances for each dismissal. Penn Auto met with the Union and agreed to settle the grievances by offering to reduce Ms. Baraniecki's and Ms. Kajkowski's termination to a nine-day suspension without pay and a last chance agreement, on the basis that they had committed fewer violations.[14] Ms. Kajkowski accepted the settlement and Ms. Baraniecki rejected it.[15] The Union then proceeded to arbitration concerning the remaining terminations on January 18, 2019, where it argued that the employees were unjustly fired and that Plaintiff suffered age and sex discrimination.[16] After a full hearing where the parties had an opportunity to present evidence, argument, and call and question witnesses, the arbitrator found that 1) Plaintiff was justly terminated; 2) Plaintiff was not treated differently than any other similarly situated Penn Auto employee; and 3) Plaintiff's age and sex discrimination claims were "novel" and "bordering on ridiculous."[17]

_____

[13] Id. at 9.
[14] Id. at 10.
[15] Id.
[16] Id. at 11.
[17] See Defendants' Exhibit A, Doc. No. 24-4, at 64-8. The arbitrator also found Ms. Baraniecki's termination too severe and reinstated her following a 30-day suspension without pay. Id. at 70.

On August 23, 2019, Plaintiff brought the instant action in this Court, claiming Defendants discriminated against him in violation of the ADEA, the PHRA, and Title VII.[18] Plaintiff also asserted a retaliation claim, which he has since withdrawn. On March 12, 2021, Defendants moved for summary judgment on all claims, Plaintiff filed a response on March 29, 2021, and on April 7, 2021, Defendants filed a reply brief.

## II.   LEGAL STANDARD[19]

To obtain summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] Disputes about "material" facts are those that "might affect the outcome of the suit under the governing law."[21] Once the movant meets its initial burden, the nonmoving party must then "go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial."[22]  A "genuine" dispute exists if the non-movant establishes evidence "such that a reasonable jury could return a verdict" in their favor.[23]  "The

---

[18] See Plaintiff's Complaint Against Penn Auto, Doc. No. 1.
[19] This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).
[20] Fed. R. Civ. P. 56(a).
[21] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[22] Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations omitted) (emphasis omitted).
[23] See Anderson, 477 U.S. at 248.

5

court must review the record 'taken as a whole.'"[24] At summary

judgment, this Court must view the evidence and draw all

inferences "in the light most favorable to the party opposing

the motion."[25]  Summary judgment is proper if the non-moving

party is unable to make a factual showing "sufficient to

establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at

trial."[26]


## III.  DISCUSSION

Courts apply the McDonnell Douglas three-part burden-

shifting framework to evaluate discrimination claims under Title

VII, the ADEA, and the PHRA.[27] Under McDonnell Douglas, a

plaintiff must first establish a prima facie case for

discrimination.[28] To do so in the Title VII context, a plaintiff

must show that 1) he was qualified for the position; 2) he

suffered an adverse employment action; and 3) the evidence is

adequate to create an inference that the adverse employment

action was based on a trait protected by Title VII.[29] A modified

---

[24] Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000) quoting
Matsushita, 475 U.S. at 587.
[25] Matsushita, 475 U.S. at 587 quoting United States v. Diebold, Inc., 369
U.S. 654, 655 (1962).
[26] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[27] See Kautz v. Met-Pro Corp., 412 F.3d 463, 465 (3d Cir. 2005).
[28] See McDonnell Douglas Corp v. Green, 411 U.S. 792, 802-3 (1973).
[29] Id.

version of the scheme exists for evaluating ADEA claims, whereby the plaintiff must show: 1) he is at least 40; 2) he was qualified for the position; 3) he was discharged; and 4) non-members of the protected class were treated more favorably than plaintiff, such that an inference of discriminatory animus can be sustained.[30]

The final prong of either scheme can be met using comparator evidence – evidence that "similarly situated individuals outside the plaintiff's class were treated more favorably [than the plaintiff]."[31] While similarly situated does not mean identically situated, it is important that "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish the conduct or their employer's treatment of them."[32] Notably, a comparator's actions must have been of "comparable seriousness."[33]

If the plaintiff is successful, the burden shifts to the defendant to articulate some "legitimate non-discriminatory

---

[30] See <u>Keller v. Orix Credit All., Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997).
[31] See <u>Foye v. SEPTA</u>, 2017 WL 1150259, at *7 (E.D. Pa. Mar. 28, 2017) <u>quoting</u> <u>Anderson v. Wachovia Mortg. Corp.</u>, 621 F.3d 261, 273–74 (3d Cir. 2010).
[32] See <u>McCullers v. Napolitano</u>, 427 Fed.Appx. 190, 195 (3d Cir. 2011).
[33] See <u>Opsatnik v. Norfolk Southern Corp.</u>, 335 Fed.Appx. 220, 223 (3d Cir. 2009) <u>quoting</u> <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997).

reasons" for its actions.[34] The burden then shifts back to the plaintiff to show some pretextual evidence from which a fact finder could either reasonably "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[35] However, a plaintiff may not "avoid summary judgment simply by arguing that the fact finder need not believe the defendant's proffered legitimate explanations."[36] A plaintiff's subjective belief that he was treated unfairly is insufficient to establish the discriminatory animus required for liability under the ADEA, the PHRA, or Title VII.[37]

Defendants argue that Plaintiff has failed to establish a prima facie case of age or sex discrimination because his comparator evidence is insufficient.[38] Additionally, Defendants argue that Plaintiff has not met his burden of showing that Defendants' proffered reasons for their actions were pretextual.

---

[34] See Burton v. Teleflex Inc., 707 F.3d 417, 427 (3d Cir. 2013) quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).
[35] Id.
[36] See Fuentes, 32 F.3d at 764.
[37] See Robinson v. Nat'l Med. Care, Inc., 897 F.Supp. 184, 187 (E.D. Pa. 1995) (noting that where plaintiff could not recall specific instances of disparate treatment, his subjective beliefs were insufficient to withstand a motion for summary judgment). See Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) abrogated on other grounds by Rotkiske v. Klemm, 890 F.3d 422 (3d Cir. 2018).
[38] See Defendants' Summary Judgment Motion, at 7.

This Court agrees with each of Defendants' arguments. The comparator individuals are not similarly situated, thus summary judgment is appropriate. Moreover, even if the comparator evidence was sufficient, summary judgment would still be proper because Plaintiff has not overcome his burden under McDonnell Douglas to show Defendants' proffered reasons were pretextual.

## A. Plaintiff Did Not Establish a Prima Facie Case

Plaintiff's proposed comparators, Ms. Baraniecki and Ms. Kajkowski, are not similarly situated such that he can establish a prima facie case of discrimination. Similarly situated individuals appropriate for comparator evidence must have "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish the conduct or their employer's treatment of them"[39] and their actions must have been of "comparable seriousness."[40]

Ms. Baraniecki and Ms. Kajkowski's were found to have sat in vehicles on three days for a total of 84 minutes each. This is easily distinguishable from Plaintiff's decision to steal time on six days for a total of 342 minutes. The proposed comparators' offenses involved substantially less time theft and

---

[39] See McCullers, 427 Fed.Appx. at 195.
[40] See Opsatnik, 335 Fed.Appx. at 223.

occurred on fewer occasions than Plaintiff. Their distinguishable conduct resulted in distinguishable discipline.

Regarding alleged disparity in disciplinary records, Defendants state that they did not consider the employees' disciplinary records when making the termination or reinstatement decisions, and there is no evidence of them doing so.[41] Thus, even if this disparity does exist, and Defendants' have put forth evidence that it does not, it is not material to whether the allegedly similarly situated individuals were treated differently.[42]

For these reasons, this Court finds that Plaintiff has not established a prima facie case, and summary judgment is proper.


B. There is No Basis for Disbelieving Defendants' Reasoning

To overcome Defendants' seemingly legitimate reasons for terminating and not reinstating him, Plaintiff must put forth evidence from which a fact finder could reasonably "disbelieve the employer's articulated legitimate reasons."[43] However, Plaintiff's subjective belief that he was treated unfairly is

---

[41] Id. at 2.
[42] See Simpson v. Kay Jewelers, Div. of Sterling, Inc., 132 F.3d 639, 647 (3d Cir. 1998) ("In determining whether similarly situated nonmembers of a protected class were treated more favorably than a member of the protected class, the focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action.").
[43] See Fuentes, 32 F.3d at 764.

insufficient to establish the discriminatory animus required for liability under the ADEA, the PHRA, or Title VII.[44]

Beyond his proposed comparators, Plaintiff largely relies on his subjective beliefs that he was treated unfairly due to his age and gender. In his deposition, Plaintiff claimed "[the yard managers] are always cracking down on older employees in the facility all the time." However, when pressed for specifics, Plaintiff was unable to recall any examples of older people who he felt were "cracked down on."[45] Similarly, Plaintiff's allegations of sex discrimination were not supported beyond his contentions that the female yard manager at Penn Auto, Ms. Cantwell, exhibited "favoritism towards the girls".[46]

Plaintiff does not reference any specific incidents, corroborate his statements with direct evidence, or show he complained about this discriminatory treatment prior to learning that Ms. Baraniecki and Ms. Kajkowski were offered reinstatement. Defendants believe Plaintiff stole time and they terminated him for that reason. Plaintiff has not put forth any direct or circumstantial evidence beyond his deposition testimony to undermine this reasoning. Thus, this Court finds Plaintiff has failed to meet his burden under McDonnell Douglas

---

[44] See Robinson, 897 F.Supp. at 187.
[45] See Plaintiff's Response in Opposition to Summary Judgment, Doc. No. 26, at 38-39.
[46] Id.

to show Defendants' proffered reasons for not reinstating him were merely a pretext for discrimination, and therefore summary judgment is appropriate.

**IV.  CONCLUSION**

For the foregoing reasons, we grant Defendants' Motion for Summary Judgment. An Order follows.